this morning is number 14-8006, Harrison against the Department of Justice. Mr. McGonigal. Good morning, Your Honor, and may it please the Court. I'd like to make three points, but first I wanted to address the Court's inquiry concerning the application of the case of Brooks v. Dunlap Manufacturing. In the Brooks case, this Court concluded that the retroactive application of amended Section 202, 292, the pending actions, was a rational means of pursuing a legitimate legislative purpose. In that case, the Court allowed the statute to wipe out current pending claims under the Quay-Tam Act. In our case, we've got the same rule that would apply, but with a different result. With a rational basis analysis, the government still has to show that there was a legitimate legislative purpose and that they used a rational means for achieving this rational government purpose. In this case, there is a provision in the Daylong Act which the government construes as giving it the right to apply retroactive regulations throughout the entire Act, throughout the entire Public Service Officers Benefits Act. We don't read it that way, but even if we were to take the government's reading of that Act, they've identified as the only legitimate legislative purpose the need to have a uniform rule for these cases. Let me take you back to the basics here, because putting aside the retroactivity question and the due process question, your argument presupposes that the original regulation allowed for recovery for mental health issues as long as they flowed from the physical traumatic injury. That's correct, Your Honor. But here, as I understand the factual record, you have a finding by the workers' compensation group saying that they're totally independent. In other words, that she may have suffered from PTSD, but it wasn't caused by her knee injury. That was a decision made by the Workers' Compensation Commission in South Carolina. This is a decision that would have to be made by the director of this particular agency in the Department of Justice after reviewing all of the facts and considering all of the factors involved in this case. Our client was severely injured physically on the job. She required knee replacement surgery seven years later, so we have a serious physical injury. But, of course, we've got a total psychiatric disability as a result. When you say total, it's what, 18%? 18% was something that was quoted by a doctor shortly after the accident. In the course of time, that 18% figure has proven to be false. However, where we are procedurally here, it would be up to the director, once she has actually weighed all the evidence in front of her, to determine if our client is totally and permanently disabled. If you achieved a remand, then the director could make the decision that her PTS disease was not caused by a physical injury? You're saying that fact-finding was made in Carolina but not made in the federal regime? That's right. The director would have to make that decision independently. But that was your answer to Judge O'Malley's question. Yes, it was. But what in the medical records shows that the PTSB flowed from the knee injury? I can envision mental health illnesses flowing directly from a traumatic physical injury. But there's nothing in the medical record that indicates that her mental health problems flowed from the knee injury. Well, I think if you look at Dr. Beck's report, which the agency has put aside basically and not really given full weight to, I think that shows that the injury and all of the circumstances surrounding the injury were the cause of the psychiatric disability. But that's the problem, is that even under the best scenario, you're arguing that a mental health disease that flows from a traumatic injury. But the fact that you might have an emotionally traumatic event and a physically traumatic event that are either close or even unified in time doesn't mean one flows from the other. But it would be difficult to try to divide this up. We could imagine circumstances in which somebody was attacked and didn't have an injury and that's not this case. We have both the injury and the obvious psychiatric reaction to that injury. How one divides that up would be difficult to say. But again, that's a decision that the director would have to make on remand. She would have to basically try to divide the line saying, Regina Harrison is totally disabled because of the injury to her knee or she's totally disabled because four people attacked her. I don't think you can actually divide the two up. That's artificial. She was injured in the line of duty as a result of that injury. She's totally and permanently disabled. Now again, the director has not made that final finding. But again, what in the record would even allow the director to make that finding? Where in the record is there medical evidence that the one flowed directly from the other? At this stage, I don't think that anybody could say, Dr. Becker, that she would have been totally disabled if nobody had actually touched her, if she hadn't received the injury. I think the two of them work together. And I think if we actually look at the language and the exception in the Yanko case, it said stress arising from the injury should be considered. And it would be difficult to imagine a circumstance in which somebody was suffering stress that wasn't the result of the actual confrontation itself. We could be stressed out by the fact that you have a bad knee. Your bottom line point is that the question hasn't really been presented for adjudication. So the reason why we haven't made a record yet to connect the physical harm to the PTSD is you haven't had a forum in which anyone would listen to that argument. So far, that's correct. In the federal system. In the federal system. So your position, and also that it doesn't matter, the record has a dozen different theories and different witnesses attributing different stories of the events that occurred. Your position is that it doesn't matter which of those is accurate because there is no question that some disability, some injury, some change had taken place. I think that the agency would have to find that she was, in fact, the hearing officer in 2004 found that she had been assaulted. That finding was not adopted by the director. She referenced that finding in her findings of facts, but that was never adopted. Yes, I gather that there was no adoption, no finding, no balancing of these various theories, but no doubt that there was an injury of some sort and that's what we're concerned with. That's correct. It's impossible, I think, to separate the physical injury and the psychiatric injury in this particular case. They all arose out of the same incident, and it would be up to the director to make that determination. Could I just see if I got your case in a nutshell? My understanding is that in order for you to prevail, you have to get access to the earlier regulation because under the current regulation- I think that's correct, Your Honor. In order to gain access to the old regulation, you have to demonstrate either that the statute is not retroactive- if it is retroactive, it doesn't pass rational basis review. That's correct, and we would argue on both. Let me just say, from a point of view on rational basis review, my understanding is that the government, which we'll hear from in a minute, its best and only theory coming out of the legislative history is that the reason for retroactive effect, if it exists, must have a uniform application and regulation. That's correct, Your Honor. So at the time the 2012 statute is enacted, that argument provides for the retroactivity, the Congress knew that there had been a previous regulation that possibly would have allowed for recovery for a disease as a result of a physical injury. That's the legal fiction. The Congress also knew that there had been a subsequent regulation that would preclude such a recovery. Right. We know that in the legislative history that Congress had expressed a view that throughout from the very get-go, the object of these awards had been not for only for the basis of physical, not mental, implications. So isn't it possible that when the legislative history said we want uniform regulations, what Congress was saying is we want to have all the regulations interpreted the same going backwards. And our case law had said these regulations are essentially the same. Your Honor, the problem with the test right now is talk about a uniform rule. That's the only basis they have for it. They never said anywhere in the legislative history, they never used the word retroactive in the legislative history. They never pointed out what the scope of this regulation would be. But in my understanding of how a rational basis review works is that the Congress doesn't even have to say in the legislation or in the legislative history what its rational basis is. A court simply has to be able to divine a rational basis. And what I'm saying is I would like you to address why can't there be a rational basis when you say we have known for the longest time that it was the intent of Congress not to have awards for mental impairments, only for physical impairments. And we know that at the time the legislation was enacted, the regulation clearly provided the result that there would only be recovery for physical, not for mental impairment. Well, first of all, the statute itself says personal injury, not physical injury. I understand that, but you know what I'm talking about. I know what you're talking about. If there had been something in the legislative history that said we're going to make the entire act retroactive, allow us to apply retroactive regulations to the entire act, then it would have been clear on its face. But there was none of that anywhere in the legislative history. This was a provision that nobody understood, and if you read it, the entire statute as it was presented, as Congress voted on it, it would appear to apply to the people who were applying under the Dale Long Act itself. It's a very convoluted work. Right, but, I mean, doesn't your case get to the same, get down to rational base review in the end run no matter how you get it, because even if the statute on its face isn't clearly retroactive, then we have to ask whether or not the regulation is having a retroactive effect, which is what your lead blue brief said, and in order for the regulation to have a retroactive effect, it has to pass due process muster. Right, right. It seems to me that whether or not the legislation is retroactive on its face or whether only we're talking about a retroactive application of a subsequent regulation. Right. The process question boils on the same kettle. The problem is that the legitimate legislative goal that was identified in the legislative history and in the government's brief says that we're trying to establish a uniform rule. We already had a uniform rule. There was a uniform rule for this case that was in place when Regina Harrison filed her claim. The government is now claiming the right to change that rule at any time. It was changed in her case. It can be changed in any future case. So the rational basis that is being put forward to achieve the legislative end is, in fact, the opposite. It's not providing clarity. Aren't I also correct in thinking that the Supreme Court has said to us that the rational basis can be actually pretty thin? I mean, the threshold level of rationality doesn't have to be overwhelming. No, no, it doesn't. In order for a retroactive measure to pass a due process muster. My problem is that outside of Justice Kennedy's concurrence in Eastern Enterprises, nobody seems to have found that there was no rational basis in almost any case. But I think this is one of those cases because, again, there was only one rational basis found, the need for a uniform rule. We already had a uniform rule. The rational basis— When your case comes right down to the very, very bottom, the question is whether or not disease in the earlier regulation means a physical-based disease like a bone disease or a disease in your ear or whether it can include a mental disease. That's correct, Your Honor. And part of our argument, and we brought up the King v. Burwell case, is that this is a very important case because the way the government is reading this statute is deliberately discriminating against the mentally disabled, which is totally against national policy. And basically, they've attempted to write out the exception in the Yanko case so that they can basically say that personal injury only refers to physical injury. Well, there's discrimination in this particular case because discrimination has already been decided that that discrimination will be in the future. Right. Anyone who is physically injured who has a residual mental disease going forward isn't going to get any recovery under this statute. And I don't think that was the intention of Congress when they passed it. That's clearly not the plan. The question is whether they can snuff out the previous. I'm sorry, when you say it's not the intention of Congress, I mean, the House report is very detailed and basically makes it clear that at least the report says this statute is not intended to and was never intended to cover mental stress or strain, even if it comes in conjunction with a physical injury, and even if it's post-traumatic or otherwise. The House report was written in the summer of 2012, and our client filed her claim seven years before that. That is not legislation. That is a verbiage that was put in. If you actually look at the positions that the agency has taken, the Yanko exception was based on a written agency position, and we think that at the very least the Yanko exception should be enforced and the case should be remanded back to the agency and requiring them to enforce that exception and not go with whatever law was supposedly created in the committee report that was written seven years after the claim was filed. Okay, let's hear from the government. We'll take your rebuttal, Tom. Mr. Siegel. Good morning, Your Honors. May it please the Court. I think Judge O'Malley has precisely identified the narrowest and correct grounds upon which this Court can and should resolve this case, and that is that the record makes clear that the petitioner is not entitled to benefits in this case under either version of the regulations, and I would like to respond to some of the Court's concerns about that point. And the first thing that I think it's important to emphasize is that the Bureau has already repeatedly addressed and rejected Ms. Harrison's claim under the previous regulations, first in 2005 when the office ruled on and rejected her claim under the previous regulations, and that determination... Well, where does that get us? I mean, sure, the matter is that Ms. Harrison is very clear in what she wants. She wants to be able to establish that she has a current disease, PTSD, and that that disease has resulted from a physical injury in the line of duty. Now, I haven't seen anything, I haven't seen any rejection of that particular theory by the agency at any step along the way. I think that the initial determination of the Bureau's office in 2005 and then the first level of... Show me, not just talk the talk, show me somewhere in the records where this theory that Ms. Harrison now has in front of us had previously been adjudicated by the agency. Certainly. And you're correct, Your Honor, that... It hasn't been done. It has not expressly been rejected in so many words, but at a minimum it has implicitly been considered and rejected, and the reason for that is that... So, assuming for purposes of argument that the 2012 statute is retroactive, okay, and that as a retroactive statute it would have to pass due process muster under rational basis review... Certainly. What is the government's explanation of the rational basis? I think there are... Retroactivity. I think there are at least two rational basis. And what are they? The first has already been mentioned and is discussed in our brief, and that is Congress's rational mandate to uniformly and consistently apply the current regulations to pending claims. How does that... That's not exactly what the legislative history says, it just says uniform application regulations, right? Well, the House report also specifically mentions that in the year before the House report that the Bureau was working with over 700 claims and that the Bureau has, quote, struggled to keep abreast and must be provided with adequate means to enable it to administer the program and determine claims under the law more efficiently than it does at the present. And the House report went on to say that this legislation makes certain changes of a technical or administrative nature to the PSOBA and related law that should help to expedite the administrative processing of these legal claims against the federal government and clarify congressional intent with regard to certain matters. And by mandating the consistent application of current regulations without regard to when claims accrued or when claims were filed... Did it not say consistent application of current regulations? Are you reading from the legislative history? I'm not now reading from the legislative history. A moment ago, you were. That business about applying current regulations, that's the department's gloss, isn't it? No, that is Congress's gloss in the House report, Your Honor. I didn't see that the House report actually said they wanted to have application of current regulations. The House report defines... Does that mean the record? The House report does not specifically say that the justification applies to that particular aspect of the amendments. What the House report says is that that rational basis justifies, in general, the day-long Public Safety Act of 2012, which includes, among other things, the retroactivity provision and has already been pointed out earlier this morning, even if Congress had made no statement whatsoever about the purpose for the amendments at that time. All that is necessary under rational basis review is for the Bureau to identify or for the Court to define such a rational basis. What you're saying is the dots are there to be connected? At a minimum. And I also think it's important to point out that there's another rational basis that this Court should consider in addition to simply streamlining and expediting claims in a uniform fashion. And that retroactivity also serves the rational purpose of allowing the Bureau to promptly and efficiently adjust the terms or procedures of the program, consistent with the statute and with the Bureau's broad grant of rulemaking authority, to promote the fair and judicious allocation of limited funds under the program, which is something that Congress very well could have rationally concluded would be desirable in response to potentially changing nature of claims or questions about the meaning of certain regulations as has arisen in this case. Now getting back to the diseases which may arise as a result of physical injury clause in the pre-2006 version of the regulation, which is the only basis upon which Petitioner argues that she is entitled to relief, there are a few points I would like to make. First, by definition, PTSD, like the vast majority of psychological and psychiatric conditions, is a disorder, not a disease. Let me ask you a question about how, well, when the statute was changed, and from what you've read to us, there were 800 pending cases. Were those cases immediately taken up, reviewed, and resolved insofar as any psychiatric component or other than physical injury was involved? Well, to clarify, Your Honor, I believe the House report stated in excess of 700 claims were pending at that time, and that was prior to the House report. To answer your question, the regulations in question went into effect on September 11, 2006, and before and after the new regulations went into effect, the Bureau and this Court and Congress have only consistently ever said that no claimant is entitled to benefits under the Public Safety Officers Benefits Act for any sort of... But I'm asking whether all of the pending cases were promptly reviewed and to the extent that they would have been changed based on the interpretation that you're presenting. I don't know. I'm sorry, Your Honor. Well, in order to... The contemporaneous response of the agency that undoubtedly had a hand in explaining to the Congress why new legislation was needed, that's my question. Did they immediately impose it retroactively or let those cases that were present and unresolved take their course? Meaning, did they immediately oppose the new regulations retroactively or the... The answer is that the 2006 regulations, which went into effect on September 11, 2006, have consistently been applied to cases pending before the Court as of that date and later as of the date when the new regulations were enacted, consistent with... Even before the 2012 amendments? Oh, I apologize. The 2006 regulations, right, which were applying an earlier regulation that had the disease possibility in it. I don't know, Your Honor, and I don't know that there's anything in the record to answer that question. I think what Judge Newman, the presiding judge, was asking about what happened in 2012 when you enact legislation in which the agency has said to Congress, we've got these 700 cases that are burdening, they're really difficult. And I think what she was asking is what happened to them. Did somebody go through them and say, whoops, this has got a mental claim in it, it's no good, no good, no good down the line. If I may try responding to Judge Newman's question accurately... And you can understand, undoubtedly the agency was responsible for this change and to get a sense of legislative intent, I think nothing speaks more clearly than how they administered it the day after it was enacted. Certainly, meaning the regulations. So Your Honor is referring to the gap between 2006 when the regulations were amended and 2012 when Congress expressly mandated retroactive application. I do not know how the Bureau handled individual cases in the intervening period, but what is clear from the case law in the record is that the practical result was no different because whether the previous regulation was applied or whether the new regulations were applied, the Bureau has always consistently denied claims for disability benefits hinging on psychological or psychiatric injuries whether or not there is an alleged associated physical injury. Then what was the purpose of the change of law if it wasn't intended to make a change? The purpose of the change was to clarify, to make more clear that consistent with the Bureau's historical practice that these are not the sorts of injuries which are compensable under the Act. And this gets to a second point that I wanted to make. Why did Ms. Harrison's claim sit with DOJ for six years? There are several reasons. She comes up in 2006, right? Yes. And then we don't get an answer until after the express is passed. There are several reasons for that, Your Honor. There were extensions requested by both sides at various points in the intervening seven years. Ms. Harrison had to be examined. She was examined by several doctors. So there's no one reason that we can point to. I would say that there were several reasons. To get back to the meaning of the deleted diseases clause in the original regulation, in the pre-2006 version of the regulation, I mentioned that post-traumatic stress disorder is a disorder, not a disease. But even assuming that it is a disease... Are you taking that from what, the DSM? No, the definition, just post-traumatic stress disorder. Who decided it's not a disease and that it's a disorder? You said that. I'm strictly... Borland in the dictionary? Who told you that? I'm strictly reading the term at face value. But even if it were a disease, I think the more important point is that... Schizophrenia is a disorder, isn't it? It may be. And I think that most psychological and psychiatric conditions are disorders and not diseases because psychological and psychiatric conditions tend to be harder to diagnose, I think. Is the term disease defined in the statute? No. Occupational disease is defined, but not disease. And the agency has it by regulation provided that PTSD is not an occupational disease, right? Well, that is something that may come up on remand if, for whatever reason, this court were to remand. I don't believe that has been addressed. But the second point I wanted to make is that even if PTSD were a disease, it still would not qualify under the diseases clause because, by definition, post-traumatic stress disorder is caused by exposure to traumatic stress, not necessarily physical injury. And in this case, there isn't a minimum substantial evidence in the record, which is... It's called post-traumatic stress disorder, right? Yes. And so it means you're supposed to have some stress, right? Yes. And those of us that have lived, for example, with having to have a hip replaced, we know what stress is if you can't sleep at night because of the physical disorder. Absolutely. And is it possible... You're not suggesting that it's frivolous to suggest that PTSD is a stress that could emanate from a physical impairment. No, certainly not frivolous, Your Honor. And, indeed, is it possible that physical injury could, in some cases, cause traumatic stress, which in turn... The point of Ms. Harrison's case here is that she'd like to have an adjudication in a forum about these things we're talking about right now. Well, I think there are two answers to that. The first, as I mentioned, is that this has already been decided twice by the board. Well, you've admitted to me that the precise question hasn't been decided. You said it was decided by implication. And that just, from my vote, won't cut the mustard. Well, I appreciate that, Your Honor. Well, the other point I would make, then, is that, at a minimum, regardless of how this Court reads the office's initial determination, and regardless of how this Court reads the administrative hearing's subsequent determination and the final decision, in any event, the standard of review under Amber Messick is simply whether there is substantial evidence in the record to support the Bureau's final determination. And if you read the Director's final determination, and if you particularly look at the appendix to that final determination, there is, at a minimum, substantial evidence in the record to show, to support the conclusion, that Ms. Harrison's PTSD was caused by, if anything, justifiable and understandable trauma of being exposed to this very stressful assault and not by the physical injury of her knee. Substantial evidence is that amount of evidence that anyone can make a reasonable decision on. And the fact that the evidence you're talking about is in the record, there's also the evidence in the record that Ms. Harrison has suffered a great deal as a result of the physical injury and has, therefore, had stress. I think that is precisely my point, Your Honor. There is... The record that you tell me lacks substantial evidence to support her disease, physical life disease theory. I'm just saying there's plenty of evidence in the record that would support that theory. But this Court's standard of review is not whether there is arguably some evidence to support her theory. The standard of review under Amber Messick is whether there is any substantial evidence to support the Bureau's finding. But you're not telling us that the substantial evidence standard applies to the statutory or regulatory interpretation. You're just saying, forget all that. Take the government's view and then see if it's supported. Right. I'm saying, even assuming that retroactivity is out of the picture and even assuming that the Board were to look at this a fourth time under the deleted other diseases clause, that there isn't a minimum substantial evidence to support the decision that the Bureau has already made three times. On the government's theory that it's not retroactive, it is retroactive. No, Your Honor. This assumes that the Court finds that it's not retroactive because at a minimum, what the evidence shows is that Ms. Harrison's PTSD, that there is at a minimum substantial evidence to support the Bureau's finding that her PTSD was not caused by physical injury in and of itself in so much as it was caused by the traumatic exposure, the very stressful and understandably traumatic circumstances of responding to a prison fight. Even if we accept the proposition that we're operating under the old regulation and we accept the proposition that the old regulation says what Ms. Harrison's counsel says that it does, you think there's still substantial evidence to justify the rejection of it? Absolutely, and I think that's very clear in the Director's final determination and in the appendix attached to the Director's final determination where he discusses... But there wasn't a decision on that fact. A decision on... Just as you've described it. I would say there was a decision. The Director cited all of the evidence and as Your Honor has pointed out, there is some evidence in the record to go both ways. My point is that the Director didn't say, you know, assuming that what Ms. Harrison's trying to do is to say, I have a disease, the disease is connected to a physical injury, and then the response to that is, oh, no, no, your disease is connected not to the physical injury but to something else. There isn't there. That specific finding isn't in the record. I don't know if there's a transcript from every proceeding that Ms. Harrison had in the record, so I... You have to live with what we have in front. So why isn't there a chainery problem with your theory? Why aren't you asking us to affirm the agency on ground that the agency didn't itself expressly design on this particular point you're talking about? Your Honor, our position is that the Director's final determination... Chainery says we can't affirm on a ground that was not articulated by the agency, especially where factual considerations and the expertise of the agency is what would have driven the decision, right? Yes. So on your alternative ground position there at the end you put, it was well summed up by Judge O'Malley. I wonder why there isn't a chainery problem with that. All I can say in response to that, is that the facts are in the Director's final decision and in the appendix, and that those facts... That's what chainery is all about. The facts are always in a record. And what an appellate court did for a while was to say, well, boy, if I had been looking at those facts, I would have made a specific decision, A, and I'm going to apply that from the bench. The Supreme Court said you're not supposed to do that. You're supposed to go back where especially words driven by the facts, let the agency speak first. Well, I would also point out that... I mean, I'd sort of say nice try on that one, but I think there's a chainery problem. I would also point out, Your Honor, that the Bureau repeatedly referred to the Yanko decision in justifying the decision that was made three times to deny petitioner's claim for benefits. And the import of Yanko is clearly that these sort, this type of psychological, this mental stress... But Yanko, the facts there were different because in Yanko there was no physical injury. So we have to presuppose here that there is a physical injury and now we're sort of operating under the question. You said you would even for purposes of this argument you're willing to say, okay, even if we're under the old regulation, and even if the old regulation contemplates mental health issues that flow directly from the physical injury, that takes us out of Yanko, doesn't it? Yes, but the point that I was trying to make, Your Honor, is that the Bureau repeatedly cited Yanko and applied Yanko to the facts of this particular case in denying Nassaris's claim. So it's not as if the Bureau simply cited all of these facts in a vacuum and denied her claim without any explanation at any step of the way. No, the Bureau ties up tighter to your rational basis review argument. The agency consistently has been saying over and over and over again our awards have to be totally and exclusively based on physical impairments. That's exactly right, Your Honor, and not just the agency but also the Congress and also this Court, not just in Yanko but also in the Curtis and in the Porter decisions. So at a minimum, Congress had a rational basis from when they have a... At least in one of our cases it says the regulations are essentially the same, right? That would be the Juno case. The old regulations and the new regulations. Precisely. And they can't be essentially the same if, in your view, if disease includes mental disease. I'm sorry, Your Honor. They can't be essentially the same, in your view, because the later regulations make clear that there's no room for mental disease. Then the earlier regulations should be interpreted the same way. I would say that essentially the same is not the same is exactly the same and certainly I understand that. Certainly we acknowledge that a change was made to the regulation and the diseases clause was deleted. It is conceivable that a certain claimant who has an identifiable disease that was caused by a physical injury could conceivably be entitled to compensation under the prior regulations but not the current regulations. But that is not this case and there is at a minimum substantial evidence in the record to support the Bureau's determination. So what is this case? If this case is your position that there was a change and it's retroactive and that ends it? It's our position that the case is retroactive and that pursuant to Congress's mandate it should be applied retroactively and if the court agrees with us there then there's no dispute. The mandate that it be applied retroactively was silent. So what are you telling us? As we address in our... It was retroactive that we wouldn't be having this debate? I'm saying that the narrowest ground for the courts to resolve this case I think is to hold that it doesn't matter which version of the regulations applies. The court wishes to address the retroactivity question. I think that the provisions in 3796C2 clearly does apply to all regulations promulgated pursuant to the Public Safety Officer's Benefit Act. Even if the statute hadn't been written in 2012 which the government says is Congress saying apply the new regulation retroactively. If it hadn't done that the agency here applied the new regulation retroactively. Yes. So isn't there a due process question right there? Would apply the regulation retroactively in 2013 after the statute was signed? The 2012 act had never happened. Certainly. And what the agency does is the agency says well you got injured in 1990 or whatever and the regulation that we would ordinarily apply would be the regulation extend at the time of your injury and the time when you filed your claim. But we've had a later regulation so we're going to apply the later regulation. Yes. I think in that... The agency can't do that in an arbitrary and capricious way. Certainly not. So a due process comes into the case no matter how you look at it. Well and not just due process but in that case, in that scenario, then you would be in the Princess Cruises land graft world which is not an issue here because there is... Yeah but say, assume that we look at this situation and we just throw that 2012 act out because it kind of messes up the analysis to say it's perfectly clear here that Ms. Harrison has a claim that she wants to mount under the old regulation. And the agency said I won't listen to it because under the new regulation that argument won't fly. Well I don't think that the court should or could throw out the 2012 amendments No but I'm just saying the due process question to me is exactly the same whether we're looking at it by saying can this statute pass muster? Understood, Your Honor. Can the regulation pass muster as a retroactive regulation? Understood. In either scenario then, there would be a rational basis to support Congress's decision that the current regulations should be applied uniformly and consistently retroactive. I've never thought of that but I'm not sure that it's exactly the same due process review. We know that due process review on a retroactive statute has a fairly low threshold. And we know that the court can divine the rational basis itself. When an agency is applying a regulation retroactively, I'm not certain that that same low threshold due process test works or whether there's a higher measure of scrutiny. I'm not aware of any case law to suggest that any different standard applies. Nor am I. I'm just saying there's a vacuum. Thank you, Your Honor. Taking up with the due process issue that was just mentioned, when you're dealing with a retroactive statute you need to, there is a much greater analysis of those kinds of cases. If we go to the Bowen case, you're required to have express terms requiring the clear intent, requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. And there's none of that in the legislative history. There is nothing to show that Congress weighed the potential unfairness to the claimants and that they made an affirmative action in this case to decide to, yes. Your concern is that she was treated unfairly. Why is it that she didn't show up for a hearing? It's because she suffers from panic disorder, Your Honor. She has, she's been diagnosed with agoraphobia, which is again, beyond just the PTSD. We're dealing with somebody who basically is unemployable because she can't leave her house most mornings. And that was the problem, was that she is But there's no indication that she provided any explanation. She just simply didn't show. She, it's, this is before I had the case, obviously, Your Honor, but she was actually in the building and could not bring herself to actually appear. And that is a symptom of her agoraphobia and of her panic disorders and of the other related psychiatric disorders. So we're dealing with not just PTSD, but a whole host of psychiatric disorders. And in this case, the again, counsel brought up the fact that our client has been examined by doctors and that was part of the reason for the delay. She has never been examined by a government psychiatrist. The government decided not, apparently decided not to have a psychiatrist examine her. So there's no psychiatric finding from the government to show that our client's stress and psychiatric disorder was a result strictly of her knee injury or whether or not it was part and parcel of the knee injury and basically the circumstances surrounding how she suffered the knee injury. I will say this, though, that part of the delay was attributable to our asking for more time. We needed more time to basically get everything together. So I want to give the agency credit for doing that. From the time that Dr. Beck's report was presented to the agency in January 2013, it was a delay of more than three years before the agency rendered its decision in this case. You started off by your argument that you don't think that this particular 2012 statute is really a retroactive statute because it doesn't have all of the earmarks from case law. But where does that get you? I mean, what you have here is a later regulation that was applied to your case. Right. Am I wrong in thinking that the question, due process question there is whether there's a rational basis for the agency to apply the regulation retroactively? Well, I think if we take the 2012 act out of the picture, it's basically, is this agency allowed to engage in retroactive rulemaking without any express authority from Congress to do that? And I would say no under the Princess Cruz's test. The agency that runs against our understanding of how American law is supposed to work. Why is that so? If we look at the Princess Cruz's test, there was a substantial change in the regulation after Regina Harrison filed her claim and it had an effect it had a direct effect on basically what her behavior was and it violates basic due process of fair notice. When Regina Harrison showed up to work on the 24th of October in 2001, this benefit existed for people who suffered some forms of stress under the ANCO exception and that was eliminated after the fact. That was eliminated retroactively and so I think that in all three parts of the Princess Cruz's test that the agency was required to apply the regulation as it existed on the day she filed her claim. Now, the government is now saying, well, we have this later statute that allows us to do what we've been doing all along anyway. Can I get you back because I'm really disturbed by your response about somehow we're supposed to believe that she was in the building and afraid to go when there's actually statements in the record from your clinic saying to the director that the reason she didn't come is because her husband was controlling and he convinced her not to go. Now, are you coming up with new facts that you think sound better? Why would you make that argument before the director and now try to tell us that it was a totally different circumstance? I was not there that day so I cannot stay for certain. The husband has been controlling over the years. They are no longer together. She did have the advice of legal counsel as they say right here when she made the decision not to show up. Yes. She affirmatively declined to attend the hearing. I don't think she did, Your Honor. I think that's a fact question that would have to be developed. It's not a fact question that has to be developed because your clinic specifically told the director that she made a decision to decline not to come and she did it because she was under the thumb of her husband, not because she was too incapable of showing up. I think there was a combination of reasons, Your Honor, but it is correct that the letter from my student attorneys did indicate that. That was one of the many factors. We're dealing with a client or the petitioner here who is an extremely damaged woman. That's basically what Dr. Beck said. This is the most damaged patient that he's ever had to deal with in his 30 years of practice. I think that the letter was incomplete as to what the rationale was for her not appearing at the hearing. I believe that if we look at Social Security hearings, that if a client is suffering from a mental disorder and does not show up for Social Security hearings, I believe it's the common practice to take that into consideration. I wish my client had been there, but she wasn't. I think we have the story as well as we saw. Thank you both. The case is taken under submission. Thank you.